JOSEPH C. McADAMS v. PIEDMONT TRUST COMPANY AND
S. A. MORROW ET AL.

(Filed 2 December, 1914.)

**Liens—Material Men—Mortgages—Priorities.**

The lien upon a building given the contractor for its erection, and to those furnishing material used in its construction, relates back to the time of the commencement of the work; and where the parties have entered into a contract for the erection of the building before, and the contractor commences work thereunder subsequent to the execution and registration of a mortgage on the lands given by the owner to pay off encumbrances thereon and to acquire additional land to widen the lot,

together with commissions and expenses in securing the loan, it is held that his lien is taken subject to the mortgage, of which registration has fixed him with notice before commencing to work under his contract. *Chadbourn v. Williams*, 71 N. C., 444, cited and distinguished.

Appeal by defendant trust company from *Lyon, J.*, at January Term, 1914, of Alamance.

This action was brought by the plaintiff to recover of the defendants S. A. Morrow and wife the sum of $1,264.50, alleged to be the balance due him on a contract, dated 14 June, 1911, to erect a hotel building for them on their lot, 36 x 70 feet, in the city of Burlington, opposite the Presbyterian Church. Defendants, the Morrows, on 19 July, 1911, which was some time prior to the date when plaintiff first commenced to do the work and to furnish the materials under the contract, executed to the Piedmont Trust Company, their codefendant, as trustee, a deed of trust on the property in question, which was duly registered on 20 July, 1911, to secure their thirteen bonds in the sum of $500 each, aggregating in amount $6,500, which bonds were negotiated and placed by said trust company with their customers, and the proceeds thereof were applied as hereinafter set forth. That said money was borrowed by the Morrows to pay off certain liens and encumbrances upon the property conveyed to them by the trust company as trustee, costs and expenses and commissions for securing the loan; the satisfaction of a mortgage on part of the property; the payment of the purchase money due on 6 feet acquired to widen the lot for the building, and the balance for the plaintiff. It appears from the plaintiff's own evidence that he did not begin the work on the hotel nor furnish any of the materials for its erection until 7 August, 1911.

Miss Dora Teague testified that she was secretary and treasurer and bookkeeper for the trust company, and the following is a correct statement of amounts paid out of the proceeds of the bonds secured by the deed of trust:

| | |
|---|---:|
| Paid bal. due Piedmont Trust Co. on fire ins............$ | 21.25 |
| For registration deed trust and notary fees............. | 5.00 |
| Paid bal. due on $2,200 loan and interest............... | 622.82 |
| Paid Piedmont Trust Co., securing loan................ | 200.00 |
| Paid W. E. Sharpe, bal. on loan on Rippy House........ | 1,307.22 |
| Paid J. D. Andrew, 6-foot lot........................ | 240.00 |
| | $2,396.29 |

That all the balance of said $6,500 was paid to the plaintiff J. C. McAdams upon the order of Morrow and wife, and that frequently, in making payments, said McAdams directed that said orders be made to parties to whom he was indebted.

The defendant Piedmont Trust Company moved to nonsuit the plaintiff, and afterwards for judgment upon the verdict, which motions were denied. It also excepted to rulings upon evidence and to the charge of the court.

The court submitted certain issues to the jury, which with the answers thereto are as follows:

1. Are the defendants Mr. and Mrs. S. A. Morrow indebted to plaintiffs? If so, in what amount? Answer: "$1,164.50, with interest."

2. Did the plaintiff begin the work, or the furnishing of material upon the premises described in the complaint, before the registration of the deed of trust to the defendant the Piedmont Trust Company? Answer: "No."

3. Did the defendant the Piedmont Trust Company have actual notice that plaintiff had a contract to build the house at the time of the taking and registration of the deed of trust? Answer: "Yes."

The court told the jury that the first issue did not concern the defendant Piedmont Trust Company, and then instructed them as to the evidence and law relating to that issue. He directed the jury to answer the second issue "No," as there was no evidence to show that the work was begun or the materials furnished by the plaintiff before the deed of trust was registered. As to the third and last issue, the jury were instructed to answer it according to the greater weight of the evidence, the burden being on the plaintiff.

Judgment was entered on the verdict for the amount found by the jury to be due from the Morrows to the plaintiff, and the defendant Piedmont Trust Company, after reserving its several exceptions, appealed to this Court.

*W. H. Carroll for plaintiff.*
*E. S. Parker, Jr., for defendant.*

WALKER, J., after stating the case: There was a motion to nonsuit the plaintiff, to the refusal of which and to alleged errors in other rulings exceptions were duly taken, but we need consider only one of them, which is the denial of the defendant's motion for judgment upon the verdict, as we think the defendant trust company was entitled to have this motion granted, and as this will finally dispose of the case, we confine our attention to it.

Construing our statute on liens of mechanics and laborers, this Court held in *Burr v. Maltsby,* 99 N. C., 263, that the lien relates back to the time the work was commenced or the materials were furnished, and does not impair or affect encumbrances existing prior to that time, but only those subsequently created. This has been the uniform and finally accepted interpretation since that decision was made. In the later case

of *Cheesborough v. Sanatorium,* 134 N. C., 245, it is said: "There can
be no doubt that as against the defendant corporation (for whom the
work was done), the plaintiffs have a lien, pursuant to the provisions
of the statute which provides for such liens. This lien, however, is sub-
ordinate to the registered deed of trust, attaching, as it does, at the time
of the beginning of the work or the furnishing of the materials." This
language cannot be misunderstood, and is plainly against the contention
of the plaintiff and the ruling of the court, unless the mere fact of notice
by the trust company that plaintiff had contracted to build the hotel at
the time of taking and registering the deed of trust should be permitted
to alter the case, and we think clearly it should have no such effect.
Plaintiff's counsel relied very much on *Chadbourn v. Williams,* 71 N. C.,
444, but that case is far from sustaining his position. There some of the
materials had been furnished before registration of the mortgage, and
it was held that, the contract being entire, the contractor might proceed
to complete the contract, notwithstanding the mortgage had been given
intermediately, unless the mortgagee had forbidden it after his mort-
gage had been registered (*Pipe Co. v. Howland,* 111 N. C., 615), "but,"
said *Justice Rodman,* "it is otherwise where a sale is made, or a mort-
gage duly registered, before the materials are begun to be furnished,
although the mortgagor remains in possession. In such case the material
man has notice of the mortgage, and furnishes the materials on the sole
credit of the mortgagor and his estate," citing *Jessup v. Stone,* 13 Wise,
466; *Hoover v. Wheeler,* 23 Mass. (1 Cush.), 314. It should be noted
that in the cases cited by the Court for the first proposition, the abso-
lute title to the property had passed pending the work being done and
the materials furnished, and it was nothing but reasonable that the
owner should have been required to object and stop the work, if he was
not willing to pay for it; but the principle last stated fits this case
exactly. *Platt v. Griffith,* 27 N. J. Eq., 207, is still more analogous, for
it decides the question upon the same state of facts as appears in this
case. It was there said: "The conclusion flows from the fact that the
lien claimants had notice, before giving credit on the security of the
land, of the existence of the complainant's mortgage, and of the amount
for which it was to be security, and in such case, where the mortgage
is executed, *bona fide,* to secure the payment of advances to be used in
constructing the building, there appears to be no reason why the mort-
gagee should not have priority as against the lien claimants with notice,
to the extent of his advances *bona fide* made according to his agreement,
up to the amount for which the mortgage is, according to its terms,
intended to be security." It will be seen by reading the facts of that
case that the mortgagee had full notice of the intention to erect the
building, and the mortgage, as here, was given for the purpose of rais-

167—32

ing the money in advance to pay for its construction, which is our case. See 2 Jones on Liens (2 Ed.), sec. 1469; 1 Jones on Mortgages (6 Ed.), sec. 609; *Haeussler v. Thomas,* 4 Mo. App., 463; *Crandall v. Cooper,* 62 Mo., 478; *Hardware Co. v. Investment Co.,* 10 Col. App., 161; *Ferguson v. Miller,* 6 Cal., 402. In the case last cited the Court said, at p. 404: "The mechanics who erected the house for Miller were bound by the previous outstanding mortgages executed by him. It was not their province to determine the legality of his recorded title, but having contracted with him in the face of these encumbrances, they are postponed until they shall be first paid off." In this connection we find that *Moroney's Appeal,* 24 Pa. St., 372, is a strong authority. It was there held that a mortgage, given with a bond and in the common form and immediately recorded, and intended to secure the payment of a sum of money which the mortgagee then contracted to loan to the mortgagor for the purpose of enabling him to erect houses on the mortgaged property, and which was to be advanced in proportion to the progress of the work, is valid, though the contract of loan be not referred to in the mortgage, nor recorded; and it ranks as a lien for the amount loaned from the date of its record, and not from the date of the actual advances; and this is so, though the mortgagor contracted to apply the money to the payment of the builders, and had, in part, failed to do so, and they had entered their liens. And the other cases to which we have just referred are equally as emphatic in declaring the law to be contrary to the position now taken by the plaintiff. See, also, *Allis-Chalmers Co. v. Cent. Trust Co.,* 39 L. R. A. (N. S.), p. 84, and annotations, where it is said that the fact that funds for the improvement of property were raised by a mortgage thereon does not estop the mortgagees from asserting a priority over persons claiming liens for lumber and materials supplied for the improvement.

The plaintiff also relies on cases where it is held that as to a certain kind of property, which can be segregated from the land, the lienor has a preference over the mortgage, and. *U. S. v. N. O. R. R. Co.,* 79 U. S. (12 Wall.), 362 (20 L. Ed., 434), so holds; but the principle there considered relates peculiarly and solely to property not permanently affixed to the realty, such as cars and other rolling stock, and does not apply where the property on which the lien is claimed is so attached to the realty as to become a part thereof, in which case the prior mortgage upon the realty will take precedence.

The following propositions were decided in *U. S. v. N. O. R. R. Co., supra:*

1. A mortgage by a railroad company covering all future acquired property attaches only to such interest therein as the company acquires, subject to any liens under which it comes into the company's possession.

2. If the company purchase property subject to a lien for the purchase money, such lien is not displaced by the general mortgage.

3. If the company give a mortgage for the purchase money at the time of the purchase, such mortgage, whether registered or not, has precedence of the general mortgage.

4. This rule fails, however, when the property purchased is annexed to a subject already covered by the general mortgage, and becomes a part thereof; as when iron rails are laid down and become a part of the railroad. The principle, too, was applied only to cases where there was after-acquired property of the kind described, having a distinct identity and susceptible of separate ownership and separate liens, which were subject to the lien of the prior mortgage, along with other property not affected by the mechanic's lien. *Fosdick v. Schall,* 99 U. S., 285, was of this class, as were the other cases mentioned in plaintiff's brief.

The work and labor was performed and the materials furnished by the plaintiff with full knowledge, in law at least, and also in fact, of the prior mortgage. He must be presumed to have been able to take care of his own interests and to have contracted for a lien with reference merely to the equity of redemption and in subordination to the older encumbrance, of which he had full notice, and his case must now be judged by these considerations. The mortgagor could not give him a better right or title than he himself possessed at the time. As the work was commenced after the defendant's mortgage was registered, the lien of the plaintiff is subject to the prior lien of the mortgagee, and the court should have so declared.

There was error in not granting the trust company's motion for judgment upon the verdict, and the case is remanded to the court below with directions to enter a judgment there for the appellant upon the merits; that plaintiff, as against said defendant, take nothing by his action, and that said defendant go without day and recover its costs.

Reversed.