WALKER, J., concurring. BROWN, J., not sitting.
This is an appeal from an order of Judge Bond distributing the funds in hand and adjudicating property mortgaged for purchase money to be not liable primarily for payment of tort claims and labor claims against the Buell-Crocker Lumber Company, nor liable for costs and expenses of receivership, nor for labor and tort claims incurred by receivers while operating the plant under an order of the Superior Court, until payment of purchase money.
The receivers and certain claimants appealed. The order was made upon exceptions to the report of the referee.
On 6 January, 1910, Frank Buell purchased of the Cape Fear Lumber Company certain property, and to secure the purchase money executed simultaneously with the conveyance a mortgage on the same for $54,582, which was immediately registered.
Some time thereafter, Frank Buell conveyed his equity of redemption in said property to the Buell-Crocker Lumber Company, which went into possession of the property and remained in possession until the receivers were appointed, who sold the same, under order of the court, for $7,850, which sale was duly confirmed, and the receivers executed a deed to the purchaser. The said sum of money is now in the hands of the receiver. The court ordered the property sold, free from lien, and transferred the lien of the Cape Fear Lumber Company from the property to the fund now in court.
The Cape Fear Lumber Company was made a party, after the property had been sold by the receivers, upon a petition asking the court to turn over to it the fund derived from such sale, to be (516) applied to the payment of its mortgage for the purchase price, on which there was due at the time of the sale $12,706.21, all of which was due, with no means of satisfaction, except the proceeds of the sale. Said Cape Fear Lumber Company was not made a party to this proceeding until after the receivers had ceased operating the mill and plant and had sold most of the corporate property, and after all the costs and expenses had been incurred, except the cost of a reference, which reference was had for the purpose of taking evidence and reporting to the court the facts found, to enable the court to adjust the equities of the various parties in interest.
The Buell-Crocker Lumber Company, when it purchased the equity of redemption from Frank Buell, agreed with him to pay the mortgage debt due by him to the Cape Fear Lumber Company, but said agreement was between him and the Buell-Crocker Lumber Company, and the Cape Fear Lumber Company was not a party thereto. There was no agreement whereby the Cape Fear Lumber Company agreed to accept the Buell-Crocker Lumber Company as the debtor in said mortgage, nor did it agree to release Frank Buell as the debtor. Said Buell-Crocker Lumber Company, however, paid the Cape Fear Lumber Company certain sums on account of said indebtedness, but paid it in partial exoneration of property in which it had bought the equity of redemption.
On 23 April, 1912, the Buell-Crocker Lumber Company bought from D. L. Farrior certain lands, and executed a mortgage thereon for the purchase money, $25,000 of which has never been paid and is more than the property will bring. In the same year the Buell-Crocker Lumber Company bought from the New Hanover Shingle Mills certain timber, and executed thereon a mortgage for the *Page 555 
purchase money, on which $26,150 is still due, and it is found by the judge, upon admissions, that it will not bring the balance due on said mortgage.
The Buell-Crocker Lumber Company also executed to the Murchison National Bank, for money used in its operations, a mortgage on lumber on its yard, and a second mortgage for $14,000 on part of the property set out in the mortgage for the purchase money executed by Frank Buell to the Cape Fear Lumber Company, this mortgage covering other property also. The property in the first-named mortgage brought $1,850. About the same time the Buell-Crocker Lumber Company executed a mortgage on two mill plants to Sizer Co., for $10,000, for money borrowed.
The Buell-Crocker Lumber Company afterwards became insolvent, and in 1914 Humphrey Brothers brought suit, and it was placed in the hands of a receiver. At this time the company was indebted to various parties, including claimants, for $6,787.31, for labor done within 60 days prior to appointment of receivers, and also for some claimants in tort for $800, whose lands had been burned over by its negligence. The receivers proceeded to operate the (517) plant, and incurred a larger indebtedness, to the payment of which said 60-day labor claimants and the tort claimants and all the other appellants tried to subject the amounts received by the receivers from the sale of the property.
The court below adjudged that the receivers pay over to the Cape Fear Lumber Company, or their representatives, the $7,850, proceeds of the property on which it had a mortgage for the purchase price. To this judgment the receivers, the 60-day laborers, and their creditors, Sizer 
Co., mortgagee, Humphrey Brothers, the Murchison National Bank, and the tort claimants each excepted and appealed.
After the institution of receivership the following indebtedness accrued: Claim in tort of Gibson James for burning over land, $53.75; receiver's pay-roll for labor, $3,446.32; receiver's other indebtedness, in the amount of $12,775.34.
The receivers, upon their appointment, gave bond, took charge of the property, published the notice required by chapter 173, Laws 1911, and operated the plant for about a year, without objection from any source, until the hearing of this cause before the referee, after all operations had ceased and all the indebtedness of the receivership had been incurred.
The questions presented are not as to the amount of these claims, but solely as to their order of priority. The claims fall into four classes: *Page 556 
1. Claims for labor performed within 60 days prior to the appointment of the receivers, who claim priority under Revisal 1131.
2. Claims in tort for damages by fire occurring prior to receivership, but the amount thereof determined by the referee, under Revisal 1206.
3. Debts incurred by the receivers in operating the plant, including claims for labor and torts and the costs of the action, including fees of receivers and their counsel (Revisal 1226).
4. Mortgages executed to secure money borrowed for the operation of the business, executed to Sizer Co. and the Murchison National Bank.
The judge below held that none of these claims took priority over the mortgage indebtedness to the Cape Fear Lumber Company, or for the purchase money given to D. L. Farrior, the New Hanover Shingle Mills, and others, and ordered the proceeds from the sale of the property described in said mortgage to be applied to the respective mortgage debts.
The court adjudged that the receivers pay over to the Cape Fear Lumber Company the said $7,850, the proceeds of the property embraced in its mortgage, and that the New Hanover Shingle Company, Mitchell, Taylor, and Brown, and D. L. Farrior, vendors of property on which a mortgage for the purchase money was retained are entitled to the property covered by the respective mortgages, which amount to more than the property therein will (518) bring, and that the same is not liable to be assessed for any sum whatever, either for costs and expenses in this case nor for labor or tort claims against the Buell-Crocker Lumber Company, or for any claims of any character against the receivers of the Buell-Crocker Lumber Company.
The court finds as a fact that the property in the hands of the receivers, and the fund in court after the application to the mortgages of the property (or its proceeds) embraced in said mortgages, is not sufficient to pay in full the court costs of this proceeding, eliminating the receiver's indebtedness, allowance to receivers or their counsel, and the tort and labor claims filed and allowed against the Buell-Crocker Lumber Company, and directed that the fund in court shall be held and nothing paid out until this Court on appeal shall pass upon the question presented.
The court found as a fact that neither of the three purchase-money mortgagees has anything to do with the disputes between the other parties, and that there is no reason to believe that any further assets of said corporation can be discovered, and that there is no dispute as to the amounts due the tort and labor creditors or creditors of the receivers, as found by the referee. The court *Page 557 
reserved the allowance of the receivers and attorneys to be fixed by the court hereafter. The judgment provided that, after complying with the above provisions thereof, the residue of the funds, if any, should be distributed as follows:
1. To the court costs proper, including the expenses of reference and costs incurred in carrying on said business under order of the court in this cause, pro rata, until paid in full, if the fund be sufficient.
2. After all the above provisions are complied with, if any fund remains, it shall be paid to labor claims for work done within 60 days prior to the appointment of receivers, and claims in tort existing when the receiver was appointed, pro rata, until paid in full, if funds be sufficient.
It is admitted that, after above requirements have been complied with, all funds will have been exhausted. The respective appellants contend:
1. The labor claimants and tort claimants assert that their claims accrued in 60 days before the receivership and are liens upon all the assets of the corporation prior to any of the mortgagees.
2. Sizer Co. and the Murchison National Bank, whose mortgages were given to secure credit to operate the business prior to the receivership, properly concede that their mortgages are subject to the claims for labor, tort, and receivership indebtedness in classes 1 and 3, above set out, but they assert priority to the mortgages for the purchase money.
3. The receivers contend that, being authorized by the court to operate the mill and wind up the business, the indebtedness and expenses incurred by them should be paid in preference to all other indebtedness.
4. The receivers further contend that the tort and labor claims are prior liens upon the property described in the (519) purchase-money mortgages, as well as the property covered by the mortgages to Sizer Co. and the Murchison National Bank, and that they are interested in the enforcement of such liens, because, if the purchase-money mortgages have priority there are not sufficient proceeds from the other property to defray the expenses and costs of the receivership.
The appellants have waived the assignments of error based on the lack of sufficient evidence to support the findings of fact, and the appeal therefore rests entirely upon the questions of law touching the priority of the several claims.
The judgment below must be affirmed in every respect.
In Roberts v. Mfg. Co., 169 N.C. 27, it was held: "Property acquired by a private corporation subject to a valid registered *Page 558 
mortgage does not become assets of the corporation except subject to the prior lien; and the lien given to laborers on the assets of an insolvent corporation for work done under the conditions stated in Revisal 1206, cannot affect the vested rights of the prior lienholders."
In Walker v. Lumber Co., 170 N.C. 460, it is said: "Revisal 1131, which gives to judgments against corporations for labor performed and torts committed priority over prior mortgages executed by the corporation has no application," Where the corporation acquired the property subject to such prior mortgage.
One who takes a mortgage upon corporation property for money loaned to operate it or to secure other debts, past or prospective, does so with the knowledge that, under Revisal 1131, 1206, 1207, and 1226, the lien of his mortgage is subject to be displaced in favor of laborers' liens or judgments for tort and the expenses of receivership or of other court proceedings to wind up the corporation in cases of insolvency.
But when the corporation has acquired the property subject to a valid registered mortgage, or at the time of the purchase thereof has executed a mortgage to secure the purchase money, which was immediately registered, the property is an asset of the corporation only to the extent of its equity of redemption. The corporation itself could not divest the lien of the mortgage subject to which it acquired the property, and its creditors, whether laborers or judgment creditors in tort, cannot subject the property of the mortgagees and divest their interests, to be applied to their own claims against the corporation. This would seem too plain for discussion.
The appellants rely upon Coal Co. v. Electric Co., 118 N.C. 232. In that case there was a mortgage on part of the property to secure the purchase money, and another mortgage to secure money borrowed to operate the concern. We understand the decision as holding only that this latter mortgage is subject to the claims for (520) "material furnished." If it can be construed to divest the lien of the mortgage for the purchase money executed simultaneously with the purchase of the property, we cannot give it our approval. In the very next volume (Baker v. Robbins, 119 N.C. 289) the Court held: "Unless the statute otherwise provides, a mortgage lien is superior to a subsequent lien created by statute." This must apply only, as we have already said, to property owned by the corporation,i. e., in this case, the equity of redemption, for no statute could divest the interest of the mortgagee in land which the mortgagor corporation has bought subject to such mortgage. This view is clear in all decisions since, down to McAdams v. Trust Co.,167 N.C. 498, where the Court approved the following ruling in U.S. v.R. R., 79 U.S. 362: "(1) A mortgage by railroad companies covering *Page 559 
all future-acquired property attaches only to such interest therein as the company acquires, subject to any liens under which it comes into the company's possession. (2) If the company purchase property subject to a lien for the purchase money, such lien is not displaced by the general mortgage. (3) If the company give a mortgage for the purchase money at the time of the purchase, such mortgage, whether registered or not, has precedence of the general mortgage." (We would not be understood as approving this last paragraph, under the registration laws in this State, when the mortgage is not registered.) "(4) This rule fails, however, when the property purchased is annexed to a subject already covered by the general mortgage and becomes a part thereof, as when iron rails are laid down and become a part of the railroad."
When the vendors convey property and simultaneously take back a mortgage to secure the balance of the purchase money, and such mortgage is at once recorded, there is not an instant of time in which the vendee has the legal title; and, therefore, in such case the wife of the vendee acquires no right to dower in priority to the mortgagee, nor does any right of homestead nor of a prior judgment attach. Bunting v. Jones, 78 N.C. 242;Moring v. Dickerson, 85 N.C. 466; Hinton v. Hicks, 156 N.C. 24.
Revisal 1226, provides: "Before distribution of the assets of an insolvent corporation," the court shall allow reasonable compensation to receiver and the costs and expenses of administration of his trust, and the cost of proceedings in said court "to be first paid out of said assets."
The first rule to be observed is, that the property to be subjected must be the property of the corporation, and when there is a mortgage given for the purchase money simultaneously with the purchase, and immediately recorded, the corporation owns only the equity of redemption, and the vested rights of such mortgagee cannot be divested to the payment of any liability, for any purpose, of the insolvent.
Under Revisal 1226, the first assets that are the property of the corporation must be applied to the costs of the proceedings (521) in court, including the fees of the receiver and referee, and (except as to private corporations, Roberts v. Mfg. Co.,169 N.C. 33; Trust Co. v. Coal Co., 27 Colo. 246) receivers' certificates issued in operation of the plant, under the orders of the court, and liabilities incurred for labor, and torts. Lumber Co. v. Lumber Co.,150 N.C. 282.
Doubtless, if it were shown that the conveyance and the taking of a purchase mortgage back were a device to exempt the property *Page 560 
from liability for labor and torts, such mortgage would be held no bar to collection of such claims.
The next liability is to claimants for labor performed within 60 days prior to the appointment of the receiver, and for claimants in tort for which liability had accrued when the receiver was appointed. Revisal 1131 and 1203.
It being found as a fact by the judge, and not contested, that there were no assets that could accrue beyond this point, the court refrained from passing upon the priority among other creditors.
Affirmed.
BROWN, J., not sitting.